889 So.2d 871 (2004)
MICRODECISIONS, INC., Appellant,
v.
Abe SKINNER, as Collier County Property Appraiser, Appellee.
No. 2D03-3346.
District Court of Appeal of Florida, Second District.
December 1, 2004.
Rehearing Denied January 10, 2005.
*872 Jonathan D. Kaney, Jr., Jonathan D. Kaney, III, and Heather Bond Vargas of Cobb & Cole, Daytona Beach, for Appellant.
Gaylord A. Wood and J. Christopher Woolsey of Wood & Stuart, P.A., Fort Lauderdale, for Appellee.
Andrew L. Deutsch of Piper Rudnick LLP, New York, New York; and Lonnie L. Simpson and Christian C. Burden of Piper Rudnick LLP, Tampa, for Amici Curiae Real Estate Information Professionals Association; National Public Records Research Association; First American Real Estate Solutions L.P.; Data Tree, LLC; and Data Trace, LLC.
Robert M. Dees of Milam & Howard, P.A., Jacksonville, for Amici Curiae First Amendment Foundation and the Florida Society of Newspaper Editors.
Lawrence P. Zolot, Hollywood; and Paul Bender, Christopher A. Mohr, and Michael R. Klipper of Meyer & Klipper, PLLC, Washington, D.C., for Amici Curiae LexisNexis; West; National Background Data, L.L.C.; The National Association of Professional Background Screeners; The Center for Information Policy Leadership; OpenOnline, L.L.C.; Public Record Retrieval Network; Choice Point, Inc.; Seisint, Inc.; and the Software & Information Industry Association.
NORTHCUTT, Judge.
The issue before us is whether a county property appraiser may require prospective commercial users of the records created in his office to first enter into a licensing agreement. We conclude that he may not. For this reason, we reverse the summary judgment in favor of Abe Skinner, the Collier County Property Appraiser, and remand with directions to enter judgment for Microdecisions, Inc.
The facts in this case are uncontested. Microdecisions compiles data concerning *873 real estate in south Florida, then sells this product on its website. Its customers can pay to retrieve plats, maps, and information about property values and mortgage encumbrances, among other things. With this purpose in mind, Microdecisions sought copies of Geographic Information Systems (GIS) maps that Skinner created in the course of his official duties. No one disputes that the GIS maps are public records,[1] but Skinner claimed they were copyrighted under federal law. He refused to permit Microdecisions' unfettered use of the maps unless it agreed to a licensing agreement that required a royalty payment if the maps were used commercially. Microdecisions filed a petition for writ of mandamus and a declaratory judgment action in circuit court, seeking to compel Skinner to provide the public records unencumbered by the licensing agreement. Skinner filed affirmative defenses, and eventually both parties moved for summary judgment.
We review a summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). The circuit court based its decision to grant Skinner's summary judgment motion on two of his affirmative defenses. The court's first ground was that Microdecisions' claim under Florida's public records laws was moot. Skinner maintained that after the lawsuit was filed, he sent Microdecisions a set of CD-ROM discs containing the maps. Thus, he argued, Microdecisions' claim was moot because the company had been given the public records. But the maps were transmitted with a letter that enclosed "a copy of the Personal Use License Agreement that does not permit commercial use of the data in any manner." The license agreement purported to bind the user if the discs were used. Microdecisions was unwilling to agree to the restriction.
A case is moot only "when the controversy has been so fully resolved that a judicial determination can have no actual effect." Montgomery v. Dep't of Health & Rehabilitative Servs., 468 So.2d 1014, 1016 (Fla. 1st DCA 1985). Here, Microdecisions sought unconditional access to the public records, including the right to use the records in its business, but Skinner delivered the GIS maps on the condition that they were for personal use only. Therefore, the controversy concerning whether Skinner can validly impose this restriction on the use of the maps remained at issue. The circuit court erred as a matter of law in finding that the public records claim was moot. See WFTV, Inc. v. Robbins, 625 So.2d 941, 943 (Fla. 4th DCA 1993) (reversing the denial of a petition for writ of mandamus as moot when the issues presented were still live and the parties had a legally cognizable interest in the outcome).
The circuit court's second basis for the summary judgment was that the case involved a copyright issue that should be decided by a federal court. Skinner's affirmative defenses claimed that Microdecisions' *874 legal actions were actually an attempt to litigate his right to copyright the maps and that federal courts had exclusive jurisdiction over copyright actions under 28 U.S.C. § 1338(a). Early in the suit, Skinner filed a notice of removal to the United States District Court for the Middle District of Florida, again contending that the federal court had exclusive jurisdiction. But that court remanded the case to state court. The order of remand pointed out that the presence or absence of federal question jurisdiction is governed by the "well-pleaded complaint" rule. See Rivet v. Regions Bank of La., 522 U.S. 470, 474-75, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). The district court noted:
The well-pleaded complaint in this case alleges that the documents are public records to which the Property Appraiser must allow access pursuant to Florida law, without further restriction. Nothing about the claims in the Complaint arise out of federal law in general or the Copyright Act in particular, and they do not satisfy the test articulated by the Eleventh Circuit. Sullivan v. Naturalis, Inc., 5 F.3d 1410, 1412 (11th Cir.1993).
Microdecisions, Inc. v. Skinner, No. 2:02-cv-639-FTM-29DNF (M.D.Fla. Feb. 5, 2003) (unpublished order). It concluded that Microdecisions' complaint did not state causes of action that arose under federal copyright law.
The federal court's well-reasoned order is supported by Florida law as well. The First District addressed similar facts in Department of Health & Rehabilitative Services v. Southpointe Pharmacy, 636 So.2d 1377 (Fla. 1st DCA 1994). In that case, the pharmacy filed a petition for writ of mandamus seeking documents pursuant to Florida's public records law, section 119.07, Florida Statutes. As in this case, the complaint did not allege a cause of action under the federal copyright law, but the public entity defended on the ground that the documents were copyrighted. The Southpointe court held that under the federal well-pleaded complaint rule a copyright defense does not defeat state court jurisdiction. 636 So.2d at 1380. As such, the Florida state courts had jurisdiction over the matter.
This case, like Southpointe, arises under Florida's public records law, not under federal copyright law. Copyright is not an essential element of Microdecisions' claim. As such, as a matter of both federal and Florida law, the circuit court erred when it determined this controversy belonged in federal court. And, as we have previously discussed, Microdecisions' public records claim is not moot. Accordingly, we reverse the judgment in favor of Skinner.
The issue presented here is purely one of law; the facts are undisputed. We therefore examine whether the circuit court erred in denying Microdecisions' cross-motion for summary judgment. See Bridgham v. Skrzynski, 873 So.2d 496, 499 (Fla. 2d DCA 2004); Royal Neth. Realty, Inc. v. Ross, 421 So.2d 642, 643 (Fla. 3d DCA 1982). We hold that Skinner has no authority to assert copyright protection in the GIS maps, which are public records. Accordingly, Microdecisions was entitled to summary judgment as a matter of law.
Congress explicitly denied copyright protection to works of the United States government, 17 U.S.C. § 105, but it did not restrict state governments in that regard. "Works of state governments are therefore left available for copyright protection by the state or the individual author, depending on state law and policy, and subject to exceptions dictated by public policy...." Bldg. Officials & Code Adm'rs v. Code Tech, Inc., 628 F.2d 730, 735-36 (1st Cir.1980); see also County of Suffolk, N.Y. v. First Am. Real Estate *875 Solutions, 261 F.3d 179, 188 (2d Cir.2001). Thus, Florida law determines whether Skinner may claim a copyright in his office's creations.
In Florida, a citizen's right of access to public records is protected both by the Florida Constitution and the Florida statutes. Art. I, § 24(a), Fla. Const. (1992) (the "Sunshine Amendment"); § 119.01, Fla. Stat. (2002). Although the Sunshine Amendment was not adopted until 1992, Florida has a long-standing legal tradition of permitting access to its public records. See In re Report & Recommendations of Judicial Mgmt. Council of Fla. on Privacy & Elec. Access to Court Records, 832 So.2d 712, 713 (Fla.2002) (stating that in Florida "open access to public records is both a constitutional right and a cornerstone of our political culture"). Our first public records law was enacted in 1892. §§ 1390, 1391, Fla. Stat. (Rev.1892). Its existing progeny, section 119.01(1), declares the policy that "all state, county, and municipal records shall be open for personal inspection by any person."
The custodian of any public record must furnish a copy of the record upon payment of the fee prescribed by law, generally the cost of reproduction. § 119.07(1)(a). A requester's motive for seeking a copy of documents is irrelevant. News-Press Pub. Co. v. Gadd, 388 So.2d 276, 278 (Fla. 2d DCA 1980). Moreover, the fact that a person seeking access to public records wishes to use them in a commercial enterprise does not alter his or her rights under Florida's public records law. Since 1905, it has been clear that public records may be used in a commercial, profit-making business without the payment of additional fees. See State ex rel. Davis v. McMillan, 49 Fla. 243, 38 So. 666 (1905). McMillan interpreted the 1892 statute, which provided that public records shall be open to the public "for the purpose of inspection thereof, and of making extracts therefrom." Id. at 667. In that case the clerk of the court had argued that he could prevent employees of an abstract company from taking extracts from the public records to be compiled and sold unless the company paid him large amounts for inspecting the records and extracting them. The court held that the public records law forbade such a demand for fees. Id.
To be sure, the legislature may exempt specific public records from the public records law. See Bevan v. Wanicka, 505 So.2d 1116, 1118 (Fla. 2d DCA 1987). The Sunshine Amendment permits the legislature, by two-thirds vote, to enact exemptions for public records, but only after specially defining a public necessity and narrowly tailoring the exemption to that necessity. Art. I, § 24(c), Fla. Const. Accordingly, the legislature has allowed restrictions on the unlimited access to some public records by enacting specific statutes authorizing certain agencies to obtain copyrights in particular circumstances. See, e.g., § 24.105(10), Fla. Stat. (2003) (authorizing the Department of the Lottery to hold copyrights); § 601.101, Fla. Stat. (2003) (permitting the Department of Citrus to hold legal title to copyrights); § 1004.23, Fla. Stat. (2002) (authorizing universities to secure copyrights in certain works). No statute authorizes a county property appraiser to hold a copyright.
Additionally, the legislature has specifically permitted certain categories of public records to be copyrighted. Section 119.084 permits agencies to acquire and hold copyrights for data processing software the agencies have created.[2] The *876 staff analysis of the Senate bill that created section 119.084 recognized that a law permitting copyright protection of public records creates a public records exemption as contemplated in the Sunshine Amendment. Therefore a statement of public necessity was required under the Sunshine Amendment and was included in the bill. See Fla. S. Comm. on Comprehensive Planning, CS for SB 2220 (2001) Staff Analysis (Apr. 10, 2001) (on file with comm.).
In his brief, Skinner claims that nothing in the Florida Statutes precludes a constitutional officer such as himself from holding a copyright on the GIS maps. He misconstrues the interplay between the federal copyright act and Florida's public records laws. The copyright act gives the holder the exclusive rights to reproduce and distribute a work and to authorize others to do so. 17 U.S.C. § 106(1), (3). As such, a copyright owner may refuse to provide copies of the work or may charge whatever fee he wants for copies of the work or a license to use the work. The Florida public records law, on the other hand, requires State and local agencies to make their records available to the public for the cost of reproduction. § 119.07(1)(a). This mandate overrides a governmental agency's ability to claim a copyright in its work unless the legislature has expressly authorized a public records exemption. See Art. I, § 24, Fla. Const.; see also Op. Att'y Gen. Fla. 03-42 (2003) (stating that in the absence of statutory authorization and "in light of Florida's Public Records Law, Palm Beach County is not authorized to obtain copyright protection and require license agreements for its Geographic Information Systems (GIS) and related data in order to regulate and authorize redistribution of these materials for commercial use"); Op. Att'y Gen. Fla. 88-23 (1988) (reciting that State Attorneys may not, without statutory authority, assert copyright in training films they produced); accord Op. Att'y Gen. Fla. 00-13 (2000) ("[A] state agency is not authorized to secure or hold a trademark in the absence of specific statutory authority to do so."). Skinner has not claimed that any public records exemption applies, and indeed we have found none that do.
We recognize that in Suffolk County, the Second Circuit held that the New York Freedom of Information Law did not prevent a county from holding a copyright in GIS maps the county had produced. 261 F.3d at 195. But New York law is not Florida law. We offer no opinion on the federal circuit's analysis because it simply has no application in this case. Each state may determine whether the works of its governmental entities may be copyrighted. Code Tech, 628 F.2d at 735-36; see also 1 Melville and David Nimmer, Nimmer on Copyright § 5.14, at 5-106 (2002). As we have explained, Florida's Constitution and its statutes do not permit public records to be copyrighted unless the legislature specifically states they can be.
Accordingly, we hold that Skinner cannot prevail on his defense of copyright. Microdecisions is entitled to summary judgment as a matter of law. We reverse the summary judgment entered in Skinner's favor and remand with directions to enter summary judgment in favor of Microdecisions.
Reversed and remanded.
STRINGER and DAVIS, JJ., Concur.
NOTES
[1] Section 119.011(1), Florida Statutes (2002), defines "public records" as:

all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings, data processing software, or other material, regardless of the physical form, characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency.
In turn, section 119.011(2) defines an "agency" as:
any state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law....
[2] Skinner does not claim that section 119.084 applies to the public records at issue here. Moreover, Florida's attorney general has opined that GIS maps "do not appear to constitute `data processing software' as defined in section 119.084(1)(b), Florida Statutes, and thus are not subject to the copyright and licensing authorization contained in that statute." Op. Att'y Gen. Fla. 03-42 (2003).